OPINION *Page 2 
{¶ 1} Defendant-appellant, Thomas C. Schalk (hereinafter "Thomas"), appeals the judgment of the Seneca County Court of Common Pleas, Domestic Relations Division, finding that 250 shares of stock in Schalk Bros., Inc. was marital property; ordering the value of the stock be paid to the plaintiff-appellee, Viola R. Schalk (hereinafter "Viola"); and ordering Thomas to pay spousal support to Viola in the amount of $750/month for six years. For the reasons that follow, we affirm.
 {¶ 2} On May 30, 1981, Thomas and Viola were married in Millersville, Ohio. In 1983, Schalk Bros. was incorporated. On July 1, 2005, Viola filed a complaint for divorce. Thomas subsequently filed his answer and counterclaim for divorce. The magistrate held a hearing on July 14, 2006 and issued its decision on November 29, 2006. In its decision, the magistrate found that 250 shares of Schalk Bros. stock constituted marital property, and that spousal support was reasonable and appropriate in the amount of $750/month for six years. (Magistrate's decision, 11/29/06).
 {¶ 3} Thereafter, Thomas filed objections to the magistrate's decision. The trial court subsequently overruled Thomas' objections. On February 12, 2007, the trial court filed its divorce decree and adopted the magistrate's decision. *Page 3 
 {¶ 4} It is from this judgment that Thomas appeals and asserts three assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED ERROR IN FINDING SCHALK BROTHER, INC., STOCK HELD IN THE NAME OF THE HUSBAND, THOMAS SCHALK TO BE A MARITAL ASSET SUBJECT TO DIVISION BY THE COURT.
 {¶ 5} In his first assignment of error, Thomas argues the trial court abused its discretion when it determined that the 250 shares of Schalk Bros. stock was a marital asset. Further, Thomas argues that in 2000, he and his brothers purchased the family farm and the money used to make that purchase represented the income made by Thomas for his labor in the corporation. Thomas maintains that after the year 2000, he has not worked for the corporation. Thomas maintains that the appreciation of the business is not marital property but separate property as defined by R.C. 3105.171(6)(ii) and (iii), that the initial investment was traceable, and that the stock has not been commingled with marital property.
 {¶ 6} In a divorce proceeding, the trial court must determine whether property is marital or separate property. Gibson v. Gibson, 3d Dist. No. 9-07-06, 2007-Ohio-6965, ¶ 29, citing R.C. 3105.171(B), (D). This court reviews the trial court's determination of whether property is marital or separate property under a manifest weight of the evidence standard. Id. at ¶ 26, quoting Eggeman v. *Page 4 Eggeman, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶ 14, citingHenderson v. Henderson, 3d Dist. No. 10-01-17, 2002-Ohio-2720, ¶ 28. "`[T]he party seeking to establish an asset as separate property * * * has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property.'" Id. at ¶ 30, quoting Earnest v.Earnest, 151 Ohio App.3d 682, 2003-Ohio-704, ¶ 38, citing Peck v.Peck (1994), 96 Ohio App.3d 731, 734.
 {¶ 7} Marital property is "[a]ll real and personal property that currently is owned by either or both spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C.3105.171(A)(3)(a)(i). In addition, marital property includes: "[e]xcept as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). The statute further provides, "`[m]arital property' does not include any separate property." R.C.3105.171(A)(3)(b).
 {¶ 8} R.C. 3105.171(A)(6)(a) states,
 "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 * * *
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage; *Page 5 
 (iii) Passive income and appreciation acquired from separate property by one spouse during the marriage.
 {¶ 9} At issue, in this case, are 250 shares of Schalk Bros., Inc. stock. The parties stipulated that the value of the 250 shares of stock was $183,000. (Tr. 7/14/06 at 43).
 {¶ 10} In regards to the business, Thomas testified that he and his brothers "started the business up in 1976. We threw $3,000 in each out of our own pocket. We bought a backhoe for $8500 and we had $500 to work with. We bought a transit and we dug basements and that through the years. And then [sic] `83 we got incorporated." (Id. at 35). The corporation was formed by Thomas and his two brothers, Fred and Ed Schalk. (Id. at 28; 27; 106-107). Thomas owned 250 shares of stock in Schalk Bros. (Id. at 28; 27). Thomas had no knowledge as to the value of the business prior to his marriage. (Id. at 96). Thomas testified that he was married a year and a half when the corporation was formed. (Id. at 27). Thomas worked part-time for the corporation or helped Fred Schalk part-time up until five years ago. (Id. at 35-36). Thomas was the treasurer of the corporation. (Id. at 37).
 {¶ 11} In 1992, Donnie Saalman was brought into the company. (Id. at 28). Thomas attributed the rise in value in the business to Fred Schalk and Donnie Saalman working hard. (Id. at 37). According to Thomas, he took no money from the business before it was incorporated; all money stayed in the corporation until *Page 6 
they bought the farm; and they bought the farm in 2000 for $245,000. (Id. at 86-88). Thomas testified that he, Fred, and Ed chipped in $3,000 each in order to buy the farm.
 {¶ 12} However, no documents were presented to establish or support Thomas' testimony that a business was started in 1976.
 {¶ 13} Fred Schalk, Thomas' brother and a shareholder in Schalk Brothers, Inc., testified that the business started in 1976, and was incorporated in 1983. (Id. at 105; 107). Fred testified that the first few years, his sons, Ed's sons, Tom, and Ed worked on the evening and weekends "whenever we knew we had the time." (Id. at 108). Fred also did not present any documents to support his testimony that a business was formed in 1976.
 {¶ 14} The magistrate stated, in pertinent part:
 * * * While you cannot ignore the 1976 decisions and actions of the brothers, you also cannot ignore the practical effects to the plaintiff and the, at that time, minor children. Defendant worked hours evenings and on weekends after his Whirlpool job, hours that were spent away from his spouse and children. Further, he did not take pay, albeit for a "good" reason. While he did not deprive his family, the simple fact is they did not get this income either. It is true that the business later provided a large portion of the funds for the purchase of the family farm. However, it was not terminated. There was not a winding up and liquidation. The corporation is a going concern which has grown with the participation of defendant from a $9,000.00 business in 1976, to one worth approximately $732,000.00 in 2005. It has had gross receipts of more than $1 million in each of the last four tax years. The money and time not received by plaintiff has to be factored in *Page 7 to get a true picture. Either way, the ownership is marital property. If you go from the incorporation date, it is apparent. If you go from the 1976 start-up, there is "commingling" and an active participation in the increase of the value of this corporation from its beginnings.
(Magistrate's decision, 11/29/06).
 {¶ 15} Thomas, as the party seeking to have the stock classified as separate property, has the burden of proof. See Gibson, 2007-Ohio-6965, at ¶ 30, citations omitted. Both Thomas and Fred testified that the business was started in 1976, which was before Thomas and Viola's marriage; however, neither Thomas nor Fred produced any documents showing that a business existed prior to Thomas and Viola's marriage. In fact, there were no documents to demonstrate that a business existed prior to the parties' marriage. In addition, both Thomas and Fred testified that the business was incorporated in 1983, which was after Thomas and Viola's marriage. Thus, the shares of stock were not created until after the parties' marriage.
 {¶ 16} Moreover, although Thomas contributed $3,000 in 1976, Thomas has not met his burden of proof to establish that the property is his separate property. There is testimony from both Fred and Thomas that Thomas was working in the evenings and on the weekends for Schalk Brothers, Inc. during the parties' marriage, and that Thomas was the treasurer of the corporation. (Tr. 7/14/06, at 35-36; 37; 108). Under the Ohio Revised Code, marital property *Page 8 
includes: "* * * all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). Thomas clearly contributed labor to the corporation during the parties' marriage.
 {¶ 17} However, since there is no evidence as to the value of the business at the time the parties' were married or evidence as to value of the corporation at the time it was incorporated, it is impossible to determine what the exact amount of appreciation would be in the corporation due to Thomas' labor. The $3,000 contributed in 1976 was impossible to trace or credit to Thomas because of the lack of business records. Therefore, Thomas has not met his burden of proof to trace the asset.
 {¶ 18} After reviewing the record, we find that Thomas has failed to meet his burden of proof in regards to the 250 shares of stock being separate property. Accordingly, we hold that the trial court did not abuse its discretion in determining that the 250 shares of Schalk Bros. stock constituted marital property.
 {¶ 19} Thomas' first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT COMMITTED AN ERROR AT LAW AND ABUSED ITS DISCRETION WHEN IT ORDERED THE HUSBAND THOMAS SCHALK TO PAY TO THE WIFE VIOLA SCHALK ONE-HALF OF THE APPRAISED MARITAL VALUE OF SCHALK BROTHERS, INC., STOCK *Page 9 BUT SHOULD HAVE ORDERED AN EQUAL DIVISION OF THE STOCK.
 {¶ 20} Thomas argues, in his second assignment of error, that the trial court abused its discretion when it ordered him to pay Viola one-half the value of the Schalk Bros. stock, rather than ordering an equal division of the stock. We disagree with Thomas' argument.
 {¶ 21} First, Schalk Brothers, Inc. is a closely held corporation. In addition to Thomas' stock there are 250 shares of stock held by Thomas' brother Fred, 250 shares of stock held by Thomas' brother Ed, and 250 shares of stock held by Donnie Saalman. If the trial court were to grant Viola half of the 250 shares of stock rather than the value of the stock, Viola would be a minority shareholder in a corporation in which her husband and his brothers could combine their shares of stock to maintain a controlling interest in the corporation.
 {¶ 22} Second, Viola testified that "the business is owned by Tom and his brothers and there is some friction, uhm, in the family between them and between me. And I feel that, essentially, I would be frozen out of the any decision-making." (Id. at 53). Viola's testimony indicates that there is friction between her and the other shareholders in the corporation, and that friction would negatively affect the corporation.
 {¶ 23} Third, Thomas giving Viola the value of half of the stock, rather than the stock itself, divides the marital property. If the court merely divided the *Page 10 
shares of stock, the parties would continue to have a shared business interest, and this could prove detrimental to the corporation.
 {¶ 24} Given the aforementioned reasons, we find the trial court did not abuse its discretion when it ordered Thomas to pay Viola half of the value of the shares of stock instead of dividing the shares of stock between the parties.
 {¶ 25} Thomas' second assignment of error is, therefore, overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION AWARDING SUBSISTENCE SPOUSAL SUPPORT TO THE WIFE WHEN BOTH PARTIES ARE EMPLOYED AND EARN EQUAL PAY AND UPON DISTRIBUTION, THE WIFE HAS NOT ONLY SUFFICIENT ASSETS TO MAINTAIN HERSELF BUT ASSETS UPON WHICH SHE CAN EARN SUBSTANTIAL ADDITIONAL INCOME.
 {¶ 26} In his third assignment of error, Thomas argues the magistrate abused its discretion when it wrongly determined Viola's income; in finding that Thomas earns approximately $67,736.00 per year by including income from the farm, Schalk Bros., Inc., and Whirlpool; and failed to consider potential income generated from Viola's cash. Thomas also argues the court ignored the fact that Viola will have greater retirement benefits, and did not consider the debt required to be undertaken by Thomas to make the distributive award ordered. Further, Thomas argues the trial court abused its discretion by not reserving jurisdiction. *Page 11 
 {¶ 27} A trial court's determination regarding spousal support is reviewed under an abuse of discretion. Siefker v. Siefker, 3d Dist. No. 12-06-04, 2006-Ohio-5154, at ¶ 15, citations omitted. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore, 5 Ohio St.3d 217,219, 450 N.E.2d 1140, citations omitted.
 {¶ 28} When determining whether spousal support is appropriate, the trial court must consider the factors listed in R.C. 3105.18(C)(1). R.C.3105.18; Lee v. Lee, 3d Dist. No. 17-01-05, 2001-Ohio-2245, at *2. Although the trial court must consider the factors listed in R.C.3105.18(C)(1), this court has held that the trial court's failure to "`specifically enumerate' those factors does not constitute reversible error.'" Id., quoting Moore v. Moore (June 18, 1999), Van Wert App. No. 15-98-22, unreported.
 {¶ 29} R.C. 3105.18 provides:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties; *Page 12 
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 30} In the present case, the magistrate found that Viola was fifty-five years old and works as an LPN at Tiffin Mercy Hospital at an annual gross salary *Page 13 
of approximately $27,614.00. (Magistrate's Decision 11/29/06). Further the magistrate found that Thomas was fifty-five years old and works at Whirlpool Corp. for an annual wage of approximately $40,246.00. (Id.). The magistrate also found that Thomas has also received income from Schalk Bros., Inc, and was paid $37,703.00 from Schalk Bros., Inc. in 2004. (Id.). Both Thomas and Viola have no significant health conditions.
 {¶ 31} The magistrate then determined that spousal support was appropriate and reasonable in the amount of $750/month for six years. The trial court overruled the objections to the magistrate's decision, adopted the magistrate's decision, and ordered Thomas to pay Viola spousal support in the amount of $750/month for six years.
 {¶ 32} In determining Viola's wages, the magistrate used Viola's income from 2004. In addition, the magistrate properly determined Thomas' income by using his income from Whirlpool, the family farm, and Schalk Brothers, Inc. as R.C. 3105.18(C)(1)(a) requires the court to consider the parties income from all sources, including "income derived from property divided, disbursed, or distributed under section 3105.171
of the Revised Code."
 {¶ 33} The magistrate specifically included the "retirement benefits of both parties" and the fact that Viola has larger liquid assets in its list of factors "mitigating against an award, or at least an award of the amount and duration *Page 14 
requested by plaintiff." Thus, the journal entry indicated that the magistrate did not ignore the retirement benefits of the parties or Viola's larger liquid assets in determining spousal support.
 {¶ 34} After reviewing the record, we find that the court considered the statutory factors when it ordered spousal support. Accordingly, we find the trial court did not abuse its discretion in awarding Viola spousal support in the amount of $750/month for six years.
 {¶ 35} In this assignment of error, Thomas also argued that the trial court erred when it failed to retain jurisdiction to modify the amount of spousal support awarded.
 {¶ 36} Under R.C. 3105.18(E),
 * * * the court that enters the decree of divorce * * * does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party has changed and unless one of the following applies:
 (1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
(Emphasis added.) Thus, the trial court does not have jurisdiction to modify the order of spousal support unless the decree contains a provision authorizing the trial court to modify the spousal support order. Id. "Where a trial court orders spousal *Page 15 
support for definite periods of relatively long duration without a reservation of authority to modify the amount of support due to a change of circumstances, the trial court may be found to have abused itsdiscretion." Berthelot v. Berthelot, 154 Ohio App.3d 101,2003-Ohio-4519, 796 N.E.2d 541, ¶ 55, citations omitted, emphasis added.
 {¶ 37} In Berthelot, the Ninth District found the trial court abused its discretion when it failed to include the authorization to modify the spousal support award. Id. at ¶ 58. In that case, the duration of the parties' marriage was twenty years, the appellant had not been employed since early in the marriage, the appellee was employed as the CEO of a corporation, the appellee's income fluctuated greatly during the last years of the parties' marriage, and the trial court awarded spousal support for five years. Id. at ¶¶ 56-57.
 {¶ 38} The facts in Berthelot differ significantly from the facts in the present case. In the present case, the parties' were married for twenty four years rather than twenty years as in Bethelot. Id. at ¶ 57. Viola had been employed during the parties' marriage and was also currently employed as an LPN, which differed from Berthelot wherein the appellant had not been employed since early in her marriage and only had obtained a high school education. Id. Furthermore, Thomas has income from several sources including a farm, employment at Whirlpool, and income from Schalk Bros., Inc., and the amount of income *Page 16 
remained relatively stable which differs from Berthelot where the appellee's income deviated greatly. Id. at ¶ 56.
 {¶ 39} Accordingly, under the facts and circumstances of this case, we find the trial court did not err when it did not retain jurisdiction to modify the spousal support award.
 {¶ 40} Thomas' third assignment of error is, therefore, overruled.
 {¶ 41} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur. *Page 1