[Cite as *Hall v. Hall*, 2010-Ohio-4818.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HARDIN COUNTY

RYAN HALL,

     PLAINTIFF-APPELLEE,

     v.

SHERYL R. HALL,

     DEFENDANT-APPELLANT.

CASE NO. 6-10-01

O P I N I O N

Appeal from Hardin County Common Pleas Court
Domestic Relations Division
Trial Court No. 2007 3144 DRA

Judgment Affirmed

Date of Decision: October 4, 2010

APPEARANCES:

     *John C. Filkins*, for Appellant

     *Howard A. Elliott*, for Appellee

Case No. 6-10-01

**PRESTON, J.**

{¶1} Defendant-appellant, Sheryl R. Hall (hereinafter "Sheryl"), appeals the Hardin County Court of Common Pleas' judgment entry granting plaintiff-appellee's, Ryan L. Hall (hereinafter "Ryan"), complaint for divorce. For the reasons that follow, we affirm.

{¶2} Sheryl and Ryan were married on April 29, 1995. Two children were born as issue of the marriage: Shelby Hall (born in 1998) and Nolan Hall (born in 2002). The parties separated in August of 2006. At the time the parties separated, they were owners of real estate located at 450 East State Road, Elida, Ohio, which had been their marital residence. This house was built in 2000 during their marriage, and the cost of construction and acquisition of the building lot was around $200,000.00. Subsequently, the house was sold in 2006 for $190,000.00, and after discharging the existing mortgage on the property and a home equity loan, the balance of the sale and remaining equity equaled $68,000.00. This amount remains in escrow pending disposition by this Court.

{¶3} Ryan filed a complaint for divorce on October 12, 2007, and on December 12, 2007, Sheryl filed a counterclaim for divorce. A guardian ad litem (hereinafter "GAL") was appointed for purposes of investigating and reporting on the best interests of the children. After discovery was conducted, a final hearing on the matter was held on September 23-24, 2008. The magistrate issued its

- 2 -

decision on April 29, 2008, and subsequently, Sheryl filed objections to the magistrate's decision. On November 20, 2009, the trial court sustained one of Sheryl's objections, which concerned the issue of child support and has not been raised in this appeal, and overruled her remaining objections.

{¶4} Sheryl now appeals and raises nine assignments of error. We elect to address Sheryl's assignments of error out of the order in which they were presented in her brief.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED IN FINDING THAT THE APPELLEE WAS INTITLED [SIC] TO 100% OF THE PROCEEDS FROM THE SALE OF THE PARTIES' MARITAL REAL ESTATE FOR THE APPELLEE FAILED TO TRACE THE FUNDS AND THE FUNDS WERE COMMINGLED.**

{¶5} In her first assignment of error, Sheryl argues that the trial court erred in finding that Ryan was entitled to all of the proceeds from the sale of the parties' marital property when he had failed to trace the source of the funds as his separate property.

{¶6} With respect to dividing assets in a divorce proceeding, the trial court first must determine whether property is marital or separate property. *Schalk v. Schalk*, 3d Dist. No. 13-07-13, 2008-Ohio-829, ¶6, citing *Gibson v. Gibson*, 3d Dist. No. 9-07-06, 2007-Ohio-6965, ¶29, citing R.C. 3105.171(B), (D). See, also, *Lust v. Lust*, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶12. Pursuant to R.C.

3105.171(A)(3)(a)(i), marital property consists of "real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both * * * during the marriage." Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 160, 694 N.E.2d 989. With respect to this case, separate property, which is defined under R.C. 3105.171(A)(6)(a), among other things, specifically includes: "[a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage." R.C. 3105.171(A)(6)(a)(i). Additionally, a party that claims certain property was "separate" bears the "burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. See, also, *Shilling v. Shilling*, 6th Dist. No. OT-08-042, 2009-Ohio-1476. In order to meet this burden "the trier of fact [only needs] to believe that the existence of a fact is more probable than its nonexistence before [it] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.* (1993), 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539.

{¶7} For purposes of appeal, this Court reviews a trial court's classification of property as marital or separate property under a manifest weight of the evidence standard. *Schalk*, 2008-Ohio-829, at ¶6, citing *Gibson*, 2007-

Ohio-6965, at ¶26, quoting *Eggeman v. Eggeman*, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶14, citing *Henderson v. Henderson*, 3d Dist. No. 10-01-17, 2002-Ohio-2720, ¶28.  Accordingly, we will not reverse the trial court's judgment if the decision is supported by some competent, credible evidence.  *Eggeman*, 2004-Ohio-6050, at ¶14, citing *DeWitt v. DeWitt*, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶10.  In determining whether competent, credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony."  *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989, citing *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.

{¶8}  Specifically, at issue in this assignment of error is the disposition of the proceeds from the sale of the parties' marital residence at 450 East State Road, Elida, Ohio.  Sheryl claims that the money remaining from the sale of the marital residence was not separate property belonging to Ryan.  Specifically, Sheryl argues that the trial court erred because Ryan failed to sufficiently trace the funds as his separate property when the funds had been commingled.  We disagree.

{¶9}  First of all, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as

separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Thus, despite the fact that the inheritance may have been commingled with marital property, the inheritance could still be considered separate property as long as it could be traced. *Peck*, 96 Ohio App.3d at 734. After reviewing the record, we believe that there was some competent, credible evidence to support the magistrate's finding that the proceeds from the sale of the marital residence were traced to Ryan's separate property, which was the inheritance he had received from his father's death.

{¶10} The evidence presented at the final hearing was undisputed that in September 2000, while the parties were still married, Ryan and Sheryl entered into a contract with Alexander Homes to construct a house at 450 East State Road, Elida, Ohio. The construction contract for the marital residence was valued at around $196,000.00 and was secured by both a mortgage ($89,000.00) and a home equity loan. Under the terms of the construction contract, the parties agreed to first pay $107,000.00 towards the construction of the house before the bank would disburse the money for the loan. (Plaintiff's Ex. 3). While the realty was titled in the name of both parties and both parties signed the mortgage, both Sheryl and Ryan testified that, as a result of Ryan's father's death in November 1999, Ryan received around $220,000.00 as an inheritance, and that a significant portion of his inheritance (at least $100,000.00) went towards the construction of the parties'

marital residence. (Sept. 22, 2008 Tr. at 28, 52, 105-117); (Plaintiff's Exs. 1, 2, 4, 5). While both parties acknowledged that Ryan had received around $200,000.00 as his inheritance, there was documentation illustrating that at least $101,118.01 was received by Ryan and subsequently deposited into a bank account that was solely in his name. (Plaintiff's Exs. 4, 16). Furthermore, there was documentation illustrating that Ryan had signed and drawn three checks made payable to Alexander Homes: (1) a check dated October 27, 2000, for $39,586.25; (2) a check dated December 11, 2000, for $19,244.75; and, (3) a check dated January 16, 2001, for $47,503.50. (Id. at 117-18); (Plaintiff's Ex. 6). These checks in total equaled approximately $107,000.00, which was the amount required under the construction contract before the bank would release the $89,000.00 for the loan. (Id.). Additionally, there was testimony that these checks were drawn out of Ryan's inheritance money. (Sept. 22, 2008 Tr. at 117-18).

{¶11} Despite the undisputed evidence, Sheryl attempts to argue that it was unclear which bank account Ryan had deposited his inheritance money into prior to using it for the construction of the marital house. However, along with Ryan's documents evidencing the amounts he had received from his father's estate and the subsequent amounts he had paid the construction company for the marital residence, Sheryl explicitly admitted at the hearing that Ryan had received around $200,000.00 as inheritance from his father's death. (Sept. 22, 2008 Tr. at 23, 52)

(Plaintiff's Exs. 1, 2, 4, 5). In addition, she explicitly admitted that he had used a significant portion of his inheritance, possibly at least $100,000.00, for the construction of the parties' marital residence. (Sept. 22, 2008 Tr. at 23, 52).

**{¶12}** Therefore, we believe there was competent, credible evidence to support the magistrate's finding that Ryan had sufficiently traced a significant portion, which the parties agreed was at least $100,000.00, of the remaining proceeds from the sale of the marital residence to his separate property, which was his inheritance from his father's estate. Compare, *Freytag v. Freytag* (Aug. 15, 1994), 12th Dist. No. CA93-11-223, at *2-3 (holding that the husband made no attempt to trace the supposedly separate property from a joint bank account to an inheritance), *Burns v. Burns*, 12th Dist. Nos. CA2003-04-086, CA2003-04-089, 2004-Ohio-2296, ¶¶16-17 (finding that despite the fact that the funds had been commingled with marital funds, there was competent, credible evidence that the funds were traceable from the CDs to the savings account to appellant's separate property). Essentially, the sale of the marital residence only left $68,000.00 remaining, and because there was considerably less remaining from the sale of the marital residence than what Ryan had, at minimum, contributed and successfully traced to his inheritance, it was reasonable for the magistrate to have awarded Ryan the entire proceeds from the sale of the marital residence. Thus, it was not an abuse of discretion for the trial court to have adopted this finding.

{¶13} Sheryl's first assignment of error is, therefore, overruled.

**ASSIGNMENT OF ERROR NO. VII**

**THE TRIAL COURT ERRED AS A RESULT OF ITS FINDING THAT APPELLANT OWES MONEY TO APPELLEE AS A RESULT OF HER USE OF MARITAL FUNDS FOR THE PURPOSE OF PROVIDING THE MINOR CHILDREN WITH A PLACE TO LIVE.**

{¶14} In her seventh assignment of error, Sheryl argues that the trial court erred in finding that she owed Ryan money as a result of her drawing on the parties' home equity loan after the parties had separated. She argues that Ryan also had drawn money on their home equity loan, around $5,600.00, for various obligations, including his attorney fees and GAL fees. However, she claims that the trial court never explained why she had to repay Ryan, while Ryan was able to receive his portions of the hone equity loan free and clear.

{¶15} In addition to what was stated above in the first assignment of error, when the parties sold their marital residence there was still an outstanding mortgage and a home equity loan remaining on the property, which were subsequently paid through the proceeds of the sale. At the final hearing, Ryan testified that when he went to close on the property, he discovered that the indebtedness of the home equity loan was substantially larger than he had expected. (Sept. 22, 2008 Tr. at 119). He later discovered that Sheryl had taken two loan advances against the home equity loan, totaling $11,600.00,

approximately ten days before Ryan closed on the house. (Id. at 120, 137-38); (Plaintiff's Ex. 7). However, because Ryan had discovered the extra indebtedness right around the closing, in order to close on time, he had to sign the paperwork and agree to have the extra money deducted from the total, so that he was left with about $12,000 less in proceeds than he had originally expected. (Id. at 121). On cross-examination, Ryan did admit that he had also taken some advances on the equity loan after the parties had separated, which totaled $5,600.00, but said that he had been unaware of the two advances taken by Sheryl. (Sept. 24, 2008 Tr. at 244-47). He stated that the advances he had taken were for the following obligations: his Allen County divorce attorney, the GAL for the Allen County divorce proceeding, the property taxes for the marital residence, mortgage payments for the marital residence, and the warranty insurance for the sale of the property. (Id.).

{¶16} Ultimately, the trial court adopted the magistrate's decision, who found that Sheryl owed Ryan $10,050.00 for the advances of the home equity loan she had taken shortly before the marital residence was sold. (Dec. 17, 2009 JE at 3). The magistrate reasoned as follows:

> **Shortly before the marital residence was sold defendant took two loan advances against the parties' home equity loan in the amount of $11,600.00. Plaintiff testified he was not aware of the transaction until the date of final closing**
> **Defendant provided no accounting of the funds and could not recall as to how the monies were spent.**

> **Plaintiff also took loan advances against the home equity loan; however, all but $1,550.00 of the funds were used to pay real estate taxes and reduce the mortgage balance on the marital residence.**
>
> **To the contrary, the actions of Defendant only reduced the total amount of sale proceeds from the realty to which Plaintiff would have been entitled since the same was determined to his separate, non-marital property.**
>
> **Accordingly, Defendant should be ordered to repay and/or reimburse Plaintiff the sum of $10,050.00. ($11,600.00-$1,550.00)**

(Apr. 16, 2009 Mag. Dec.).

{¶17} First, Sheryl claims that the trial court erred because there was no explanation given as to why she had to repay Ryan for her draws against the home equity loan, while Ryan was able to receive his portions of the hone equity loan free and clear. We disagree. The magistrate explicitly stated that Sheryl owed Ryan money because: the money from the sale of the marital residence was Ryan's separate property; Sheryl's draws substantially reduced Ryan's separate property; and her draws were not justified at the final hearing. Furthermore, despite Sheryl's argument, Ryan did not receive his portions of the home equity loan free and clear. On cross-examination, Ryan admitted that he had also taken several draws out against the parties' home equity loan. However, Ryan later explained each draw he had taken out against the home equity loan, which included payments for the marital residence ($3,524.91), the marital residence's property taxes ($1,503.41), his Allen County divorce attorney ($750.00), and the GAL's fees for the Allen County divorce case ($800.00). (Sept. 24, 2008 Tr. at

- 11 -

244-48). Ryan explained that when Sheryl had moved out of the marital residence she stopped making payments on the house, and because his income alone was insufficient, he had to borrow money against the parties' home equity loan in order to pay the debts on the marital residence. (Sept. 24, 2008 Tr. at 249). However, just like Sheryl's unexplained draws, the fees for his divorce attorney and the GAL were not related to the marital residence, thus, the magistrate found that they were Ryan's individual obligation, which he had already fulfilled when he sold the property, paid off the home equity loan, and received less proceeds out of the sale. Therefore, the magistrate did account for Ryan's unrelated expenses when he reduced Sheryl's original obligation to Ryan, $11,600.00, by $1,550.00 ($800.00 + $750.00), which was the amount of Ryan's unrelated expenses. Therefore, Ryan did not receive all of the money from the home equity loan free and clear.

{¶18} Assuming Ryan's payments associated with the marital residence were justifiable, Sheryl also argues that she should not have to reimburse Ryan because she also used her home equity loan money to find a place to live and to provide basic necessities for herself and the parties' children. Sheryl claims that she testified that "when she moved out of the marital residence, she had no residence of her own and had to obtain a place to live, furnish it, and provide basic necessities for herself and the minor children." (Appellant's Brief at 19). However, despite her claims to the contrary, after reviewing the record, we find

that Sheryl never testified about what she did with respect to her draws on the parties' home equity loan, which is consistent with the trial court's finding in its judgment entry. Furthermore, and more specifically, there is nothing in the record to support or corroborate the claim that she used the money for a place to live and to provide for the children. Therefore, given that the record is silent as far as what Sheryl did with the money, and that the proceeds from the sale of the residence (Ryan's separate property) were substantially reduced as a result of Sheryl's actions, we find that it was reasonable for the magistrate to order Sheryl to repay Ryan $10,050.00. As a result, we accordingly find that the trial court's decision was not an abuse of discretion.

{¶19} Sheryl's seventh assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED BY ADOPTING THE SHARED PARENTING PLAN AS PRESENTED BY APPELLEE FOR THE EVIDENCE AT TRIAL ESTABLISHED THAT THE APPELLEE CANNOT COMMUNICATE WITH THE APPELLANT AND THE PARTIES ARE NOW RESIDING IN TWO DIFFERENT COUNTIES.**

### ASSIGNMENT OF ERROR NO. IX

**THE TRIAL COURT ERRED AS A RESULT OF ITS FAILURE TO IDENTIFY THE APPELLANT AS THE RESIDENTIAL PARENT AND ITS FAILURE TO CONTINUE THE MINOR CHILDREN IN THE FINDLAY CITY SCHOOLS.**

{¶20} In her second assignment of error, Sheryl argues that the trial court erred when it adopted Ryan's proposed shared parenting plan when there was evidence that Ryan was not willing to communicate or work together with Sheryl. Similarly, in her ninth assignment of error, Sheryl argues that the trial court erred in failing to name her as the residential parent and failing to continue the minor children in the Findlay City Schools.

{¶21} An appellate court reviews a trial court's decisions on child custody matters for an abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846; *Erwin v. Erwin*, 3d Dist. No. 14-05-45, 2006-Ohio-2661, ¶12; *Swain v. Swain*, 4th Dist. No. 04CA726, 2005-Ohio-65, ¶16. Due to the difficult and complicated nature of custody determinations, appellate courts must grant wide latitude to a trial court's consideration of the evidence, and, thus, we will not reverse a child custody decision that is supported by a substantial amount of competent, credible evidence. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159; *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. An abuse of discretion connotes more than an error of judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

{¶22} R.C. 3109.04(D)(1)(c) provides that whenever possible the trial court should adopt a shared parenting plan unless it is not in the best interests of the children. In determining the best interests of the children, the trial court must consider a number of factors, one of which includes the ability of the parents to cooperate and make decisions jointly, with respect to the children. R.C. 3109.04(D)(1); (F)(2)(a).

{¶23} Here, the trial court adopted the magistrate's recommendation to adopt Ryan's proposed shared parenting plan. (Dec. 17, 2009 JE at 1-2). With respect to the shared parenting plan, in his decision, the magistrate stated as follows:

> **Despite the parties ongoing problems over the selection of an appropriate school for the children, parenting time exchange arguments and denials of visitation and companionship they each communicated to the Guardian Ad Litem that the other party was a good parent and that the children loved them.**
>
> **Both the Guardian Ad Litem and the undersigned place significant emphasis on such statements along with the fact that the children are very close, significantly attached, and bonded with each parent. RC 3109.04(F)(1)(c).**
>
> **Although the parents love their children very much and have indicated a willingness to communicate with each other regarding the care and upbringing of the children they have not always demonstrated it.**
>
> **As noted by the Guardian Ad Litem when not involved in court matters the parents can get along sufficiently to be directly involved in the cooperative effort required to provide the children are raised in a relatively stable environment.**
>
> **Taking into consideration <u>all</u> of the applicable (relevant) factors to be considered under RC 3109.04(F)(1)(a) thru (j) in making a determination as to residential parent status and**

**consistent with the principle that whenever possible to the order or decree shall ensure the opportunity for both parents to have frequent and continuing contact with the children it is recommended that the Court adopt and approve the shared parenting plan presented by plaintiff for the reason that same would be in the best interest of the minor children.**

(Apr. 16, 2009 Mag. Dec. at 4-6).

{¶24} Essentially, Sheryl argues that the trial court erred when it adopted Ryan's proposed shared parenting plan instead of naming her as the residential parent. Additionally, and more particularly, Sheryl claims that there was evidence that Ryan was not willing to communicate or work together with her. In support of her argument, Sheryl cites to the following statements made by Ryan at the final hearing. When being questioned about whether he believed the GAL's recommendation for a shared parenting plan utilizing a week on/week off system, Ryan was asked whether he believed he and Sheryl communicate about the children, and Ryan responded, "[n]ot at all." (Sept. 22, 2008 Tr. at 123). Moreover, when being questioned about the possibility of having the children go to Findlay City School (where Sheryl lived), as opposed to Ada public school (where Ryan lived), Ryan responded, "[t]here's no reason the children should ever have to live with their mother." (Sept. 22, 2008 Tr. at 178). Based on this testimony, Sheryl argues that the trial court could not and should not have found that the parties have demonstrated an ability to cooperate and make decisions

together about parenting, and as a result, the trial court should not have adopted Ryan's shared parenting plan.

{¶25} First of all, the factor that the parties have demonstrated an ability to cooperate and make decisions together about parenting is only *one* factor out of many factors the trial court has to consider. Moreover, even though *both* of the parties may have made comments at the final hearing that they could not cooperate with one another, we believe that there was evidence in the record that illustrated that their actions throughout the proceedings demonstrated otherwise. At the final hearing, the GAL recommended that the trial court adopt a shared parenting plan because even though the parties had at times not communicated well with one another, when it came to their children Sheryl and Ryan were able to communicate and get along with one another. (Sept. 24, 2008 Tr. at 308). Furthermore, the GAL believed that they were both good parents and that given the circumstances the overall goal should be to give the children equal amounts of time with both parents. (Id). Moreover, despite their feelings towards one another, both Ryan and Sheryl admitted that they believed that the other one was a good parent and admitted that the children loved each of them.

{¶26} Nevertheless, Sheryl argues that the trial court erred in adopting a shared parenting plan and not naming her the residential parent. However, we believe that the record demonstrates that a shared parenting plan was in the best

interest of the children. Moreover, because the weight to be given to the evidence and credibility of witnesses is primarily reserved to the trier of fact, we find that the trial court did not abuse its discretion in determining that shared parenting was in the best interest of the children. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. Furthermore, we find that the magistrate made the appropriate findings of fact and conclusions of law in recommending that the trial court adopt Ryan's shared parenting plan. Along with listing a few specific findings of fact, the magistrate stated that he had considered all of the relevant factors pursuant to R.C. 3109.04(F)(1)(a) thru (j), and we believe that there was sufficient evidence for the magistrate to conclude that a shared parenting plan was in the best interests of the children.

{¶27} With respect to the finding that the children should attend Ada and not Findlay City Schools, Sheryl cites to evidence she presented at the final hearing. In particular, she claims that she established that the children had already been attending Findlay City School system, and that there had been no reason to remove them and transfer them to the Ada School system. However, after reviewing the record, we believe that there was evidence to support the trial court's decision to have the children continue to be enrolled in the Ada school system. While the oldest child, Shelby, had gone to Findlay City Schools the previous school year, at the time of the final hearing, both of the children were

going to school in Ada. Furthermore, the GAL believed that the Ada school system was a better school system, and that for stability purposes the children should remain enrolled in the Ada school system. (Sept. 24, 2008 Tr. at 298). Because Shelby had adjusted to the Findlay school system from her prior school system without any problems, the GAL believed that she would be able to adjust to the Ada school system similarly without any problems. (Id.).

{¶28} Therefore, despite the evidence presented by Sheryl at the final hearing and as stated above, the weight to be given to the evidence and credibility of witnesses is primarily reserved to the trier of fact, and we find that the trial court did not abuse its discretion in determining that continuing the children in the Ada school system was in their best interest.

{¶29} Therefore, Sheryl's second and ninth assignments of error are overruled.

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED AS A RESULT OF ITS FINDING THAT THE WISHES OF THE MINOR CHILD SHOULD NOT BE CONSIDERED FOR THE CHILD DID DEMONSTRATE SUFFICIENT REASONING ABILITY TO MAKE A CHOICE.**

{¶30} In her third assignment of error, Sheryl argues that the trial court erred when it determined that the parties' minor child did not demonstrate sufficient reasoning ability.

**{¶31}** R.C. 3109.04(B)(2)(b) states that if a trial court interviews a child for purposes of the section, the trial court must first determine the reasoning ability of the child. "If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concern with respect to the allocation of parental rights and responsibilities for the care of the child, it *shall not* determine the child's wishes and concerns with respect to the allocation." R.C. 3109.04(B)(2)(b) (emphasis added).

**{¶32}** After reviewing the transcript from the in camera interview of the parties' oldest minor child, Shelby R. Hall (who was 10-years-old at the time of the interview), we believe that the magistrate's finding that Shelby did not demonstrate sufficient reasoning ability to express her wishes was reasonable under the circumstances, and that the trial court did not abuse its discretion when it adopted the finding. *In re Longwell* (Aug. 30, 1995), 9th Dist. Nos. 94 CA 006006, 94 CA 006007, at *1-2. The magistrate asked questions sufficient to ascertain whether the child could express her wishes and concerns with respect to the allocation of parental rights and responsibilities, and after reviewing Shelby's answers, we believe that it was reasonable for both the magistrate and GAL to determine that Shelby did not demonstrate sufficient reasoning ability. Furthermore, we note that a child's wishes are not controlling upon the trial court and are only one of among several factors a trial court considers to determine what

is in the child's best interest. *Kellogg v. Kellogg*, 10th Dist. No. 04AP-382, 2004-Ohio-7202, ¶19. And as we stated in our discussion above, we believe that the magistrate's decision to adopt a shared parenting plan was reasonable, and that it was in the children's best interests to adopt a shared parenting plan. Thus, the trial court's subsequent decision was not an abuse of discretion.

{¶33} Sheryl's third assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED AS A RESULT OF ITS FAILURE TO FIND THAT THE APPELLEE HAD WITHHELD THE CHILDREN FROM THE APPELLANT BY TAKING THE CHILDREN OUT OF STATE FOR TWO WEEKS.**

### ASSIGNMENT OF ERROR NO. VI

**THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT THE APPELLEE VIOLATED THE ORDERS OF THE COURT WHEN THE APPELLEE ADMITTED THAT HE HAD CONSUMED ALCOHOL IN THE PRESENCE OF THE MINOR CHILDREN.**

{¶34} In her fourth and sixth assignments of error, Sheryl argues that the trial court erred in failing to find Ryan in contempt when Ryan allegedly withheld the parties' minor children from her for a period of two weeks and when he admitted to consuming alcohol in the presence of the minor children.

{¶35} Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. *Dozer v. Dozer* (1993), 88 Ohio App.3d 296,

302, 623 N.E.2d 1272, citing *State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691. A person may be punished for contempt for disobeying or resisting a lawful order, judgment, or command of the court. R.C. 2705.02; *In re Ayer* (1997), 119 Ohio App.3d 571, 575, 695 N.E.2d 1180. The essential element of a contempt proceeding is that the person facing contempt charges has obstructed the administration of justice in some manner. *State v. Kimbler* (1986), 31 Ohio App.3d 147, 509 N.E.2d 99. While there must be clear and convincing evidence for the trial court to find someone in contempt, the decision of whether to find someone in contempt lies within the sound discretion of the trial court, and this court will not reverse its decision absent an abuse of discretion. *Ayer*, 229 Ohio App.3d at 575; *Dozer*, 88 Ohio App.3d at 302, citing *Chaudhry v. Chaudhry* (Apr. 8 1992), 9th Dist. No. 15252; *Boone v. Brown*, 3d Dist. No. 5-06-14, 2006-Ohio-5967; *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11, 417 N.E.2d 1249.

{¶36} Here, the trial court overruled all pending motions for contempt because there was a lack of competent, credible evidence to support making such findings. (Apr. 16, 2009 Mag. Dec. at 17); (Dec. 17, 2009 JE at 3). Nevertheless, Sheryl argues that the trial court should have found Ryan in contempt when he took the minor children for two weeks on vacation without giving Sheryl the proper 30-day notice that was required under the temporary order, and when Ryan

admitted to consuming alcohol in the presence of the children, which was in contravention of the custody order. However, after reviewing the record, we believe that the trial court's decisions were reasonable given the lack of competent, credible evidence to support any findings of contempt.

{¶37} At the temporary order hearing, Sheryl testified that Ryan had improperly taken the children out of state for two weeks and that she had to utilize the Ada Police Department in getting them returned to her. (July 22, 2008 Tr. at 143-46). Conversely, Ryan testified that he was entitled to the vacation time and that he had given Sheryl a 32-day notice prior to taking the children on vacation with him. (July 22, 2008 Tr. at 66-67). The only other evidence Sheryl relies on is the GAL's testimony, specifically when the GAL acknowledged that she was aware Sheryl had to enlist the assistance of the Ada Police Department in retrieving the children from Ryan when he had taken them on vacation with him. (Sept. 24, 2008 Tr. at 355). However, it is clear that the GAL only said that she was aware that Ryan had taken the children on vacation and that Sheryl had called the police in connection with the matter, but offered nothing as far as whether Ryan had done so in violation of a court order. (Id.). Furthermore, we note that the GAL stated that Ryan had given her prior notice that he was planning on taking the children out of state on vacation. (Sept. 24, 2008 Tr. at 355-56). Overall, this evidence alone does not support a finding that Ryan had acted in

violation of the custody order; therefore, we believe that the trial court's determination was reasonable and not an abuse of discretion.

**{¶38}** Next, Sheryl claims that the trial court should have found Ryan in contempt for admitting that he had consumed alcohol in the presence of the parties' minor children. After a temporary order hearing concerning the allocation of parental rights and responsibilities, in its order the court specifically prohibited the "parent that has care of the children from consuming alcoholic beverages." (Jan. 7, 2008 JE). Sheryl again cites to the GAL's testimony in support of her position, in which the GAL testified that she was aware of the court order prohibiting the use of alcohol during parenting time, and that she was also aware that Ryan had admitted to consuming alcohol in the presence of the parties' minor children since that order had been issued. (Id. at 338). However, while the statement about the alleged misconduct may have been true, there was no evidence about the nature of the conduct or even if the conduct had impacted the children in any way. Without more, there is only evidence to show that a technical violation may have occurred and this Court has held that technical violations of a court order do not necessarily require a finding of contempt. *Miller v. Miller*, 3d Dist. No. 7-03-09, 2004-Ohio-2358, ¶12. Therefore, given the lack of additional evidence concerning Ryan's misconduct, we believe that the trial court's decision was reasonable and not an abuse of discretion.

**{¶39}** Sheryl's fourth and sixth assignments of error are, therefore, overruled.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED AS A RESULT OF ITS FAILURE TO ORDER THE EQUITABLE DIVISION OF PERSONAL PROPERTY.**

**{¶40}** In her fifth assignment of error, Sheryl argues that the trial court erred in not ordering an equitable division of the parties' personal property. In particular, Sheryl challenges only a portion of the division of the marital property, specifically those items from the parties' marital residence that were placed in storage by Ryan and, in her opinion, were not equally distributed by the trial court.

**{¶41}** R.C. 3105.171(C)(1) governs the division of marital property and provides, in part:

> **[T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable.**

**{¶42}** First of all, we note that "[a]lthough an equal division is a starting point when allocating marital property and debt, a decision need not be equal to be equitable." *Shaffer v. Shaffer*, 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶25, citing R.C. 3105.171(C)(1); *Lust*, 2002-Ohio-3629, at ¶25. Trial courts generally have broad discretion in determining the equitable distribution of property in divorce

cases; and therefore, we review the overall appropriateness of the trial court's property distribution under an abuse of discretion standard. *Martin v. Martin*, 3d Dist. No. 9-03-47, 2004-Ohio-807, ¶6, citing *Lust*, 2002-Ohio-3629; *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 635 N.E.2d 308; *Martin v. Martin* (1985), 18 Ohio St.3d 292, 480 N.E.2d 1112. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶43}** Here, Sheryl claims that when they separated, Ryan moved out of the marital residence and took all of the household items and placed the items in storage. Similarly, Ryan testified that, with the exception of the few items he had circled on Defendant's Exhibit K, all the remaining items from the parties' marital residence were either in storage or being used by him – with the larger percentage of the items listed in the exhibit being in storage. (Sept. 22, 2008 Tr. at 198-203). Ryan argued at the final hearing that he should be given all of the items in the storage unit because he had been paying the storage bill, while Sheryl only wanted the trial court to make a fair, equitable division of the household goods in the storage unit. Ultimately, the trial court adopted the magistrate's proposed alternate selection process for division of the property between the parties:

> **All items of personal property that have not been divided and remain in storage (Defendant's Exhibit K) should be divided between the parties as follows: Defendant shall have the option to select first, in which case Plaintiff shall select the next two**

> **items and thereafter alternate their selection with the party having selected first, selecting the fourth item. Each party should pay one half of the storage fee.**
>
> **Each party should be awarded, free and clear of any claims of the other, all household goods and furnishings presently in their possession and pay and hold harmless the other on any debt due and owing on same.**

(Apr. 16, 2009 Mag. Dec. at 11-12); (Dec. 17, 2009 JE at 3).

**{¶44}** Sheryl claims that the trial court failed to divide the personal property Ryan had taken from the marital residence that did not end up in the storage unit and that it could not have made an "equitable" division when there was no evidence on the value of the household items. Nevertheless, it is clear from the trial court's decision that the magistrate did divide the personal property not in the storage unit, and in fact, not only did Ryan retain all the items in his possession, but Sheryl was able to keep all the personal property in her possession. Furthermore, while generally in order to make an equitable division of property, a trial court should first determine the value of marital assets, there are circumstances when a trial court does not abuse its discretion when it does not value certain marital property. *Casper v. DeFrancisco* (Feb. 19, 2002), 10th Dist. No. 01AP-604, citing *Eisler v. Eisler* (1985), 24 Ohio App.3d 151, 152, 493 N.E.2d 975; *Richardson v. Richardson*, 10th Dist. No. 01AP-1236, 2002-Ohio-4390, ¶45. For example, it has been stated that even though "the trial court is required to consider the value of the parties' major assets * * * the trial court

- 27 -

cannot be expected to place a value on each individual item of personal property owned by the parties." *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶41, quoting *McCloud v. McCloud* (Dec. 23, 2005), 6th Dist. No. F-05-006, ¶22, citing *Zona v. Zona*, 9th Dist. No. 05CA0007-M, 2005-Ohio-5194, ¶5, citing *Kohler v. Kohler* (Aug. 14, 1996), 9th Dist. No. 96CA006313. We believe that it was well within the trial court's discretion to order the household goods and furnishings in the storage unit be divided by a rotating selection. *Motter v. Motter* (July 27, 2000), 3d Dist. No. 16-99-14, at *4-5, citing *Frost v. Frost* (1992), 84 Ohio App.3d 699, 618 N.E.2d 198. And after reviewing the trial court's entire division of property, we believe its decision was in fact equitable.

**{¶45}** Finally, Sheryl seems to argue that the items in the storage unit have been improperly removed by Ryan; however, issues relating to the enforcement of a trial court order should be first presented to the trial court and not on appeal. If Ryan did improperly remove the household items from the storage unit prior to the parties' utilizing the alternate selection process, the most appropriate remedy available to Sheryl would be to file a motion for contempt or show cause with the trial court.

**{¶46}** Therefore, Sheryl's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. VIII

**THE TRIAL COURT FAILED TO PROPERLY DIVIDE THE DEPENDENCY EXEMPTIONS AND IMPROPERLY USED**

**THE APPELLEE'S PRIOR INCOME TO DETERMINE DIVISION OF THE EXEMPTIONS.**

{¶47} In her eighth assignment of error, Sheryl argues that the trial court failed to properly divide the tax dependency exemptions and improperly used Ryan's prior income to determine the division of the exemption. In particular, Sheryl claims that at the final hearing Ryan was not employed and his only source of income was unemployment compensation calculated at $12,744.00. On the other hand, Sheryl did have a job at the time of the final hearing and income of $15,184.00, which placed her within the same tax bracket as Ryan. Sheryl claims that because she was the only one employed she should have received both dependency tax exemptions.

{¶48} An appellate court reviews a trial court's award of tax exemptions under an abuse of discretion standard. *Tuttle v. Tuttle,* 10th Dist. Nos. CA2006-07-176, CA2006-07-177, 2007-Ohio-6743, ¶11.

{¶49} A trial court's decision in awarding the federal income tax dependency exemption is governed by R.C. 3119.82, which states, in pertinent part:

> **[w]henever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * * If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children.**

> **If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.**

Pursuant to the statute, the custodial parent is presumed to be entitled to claim a minor child for income tax purposes, and a trial court may only award the tax exemption to a non-custodial parent if it finds that doing so serves the best interests of the child. *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 332, 528 N.E.2d 180. However, under a shared parenting arrangement both parties are, in essence, deemed to be the residential parent, thus the presumption would not apply. Therefore, the trial court is essentially left to allocate the tax dependency exemption focusing on what is in the best interest of the children, which includes any net tax savings for either of the parents. See *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 588 N.E.2d 805 (holding that a non-residential parent may receive the tax exemption when it produces a net tax savings for the parents in the best interests of the child); *Love v. Rable*, 147 Ohio App.3d 63, 2001-Ohio-2174, 768

N.E.2d 1185 (finding that a trial court has authority to award the tax exemption to the noncustodial parent if it is demonstrated that there will be a net tax savings for the parents, which advances the best interest of the child).

**{¶50}** Here, based on the evidence the parties' presented at the final hearing, the magistrate found that "[i]n the instant case the worksheet used to calculate Plaintiff's temporary support obligation listed Plaintiff's income from employment at $39,478.00 and Defendant's income from self-employment at only $5,200.00. Defendant's income places her in the 10% bracket. Plaintiff's income from unemployment for 36 weeks at $12,744.00 places him in the 15% tax bracket." (Apr. 16, 2009 Mag. Dec. at 16-17). As a result, the magistrate awarded both tax exemptions to Ryan as opposed to Sheryl, and given the circumstances of this case and the evidence in the record, we cannot find that the trial court abused its discretion when it adopted the magistrate's finding and awarded Ryan both tax dependency exemptions.

**{¶51}** Sheryl's eighth assignment of error is, therefore, overruled.

**{¶52}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**

**/jnc**

**ROGERS, J., concurs in part and dissents in part.**

{¶53} I concur in the majority's disposition of the second, third, fourth, fifth, sixth, eighth, and ninth assignments of error. However, I respectfully dissent from the majority's finding in the first assignment of error that the home was Ryan's separate property for the reasons set forth in *Neville v. Neville*, 3d Dist. No. 9-08-37, 2009-Ohio-3817, ¶¶36-39 (Rogers, J., concurring in part and dissenting in part). Having disagreed with the result reached in the first assignment of error, I cannot agree with the logic applied by the majority in the seventh assignment of error.