[Cite as *Komes v. Komes*, 2013-Ohio-2140.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JENEAN L. KOMES, | : | **O P I N I O N** |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | **CASE NO. 2012-L-086** |
| - vs - | : | |
| | : | |
| WILLIAM E. KOMES, | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 09 DR 00121.

Judgment: Affirmed.

*Elaine Tassi*, 34900 Chardon Road, Suite 207, Willoughby, OH 44094 (For Plaintiff-Appellee/Cross-Appellant).

*Edward A. Heffernan*, 28787 Ridge Road, Wickliffe, OH 44092 (For Defendant-Appellant/Cross-Appellee).

MARY EILEEN KILBANE, J., Eighth Appellate District, sitting by assignment.

{¶1} Defendant-appellant/cross-appellee, William E. Komes ("husband"), appeals from the final decree issued by the Domestic Relations Division of the Lake County Common Pleas Court in his divorce from plaintiff-appellee/cross-appellant, Jenean L. Komes ("wife"), and assigns nine errors for our review. The wife cross-appeals and assigns two errors for our review. We have determined that none of the assignments of error are meritorious, and therefore, we affirm.

**{¶2}** The parties were married on August 24, 1984. They have three children, all of whom are emancipated. The husband, who was 57 years old at the time of trial, is the owner of Power Alarm Systems, a closely held corporation that sells and services security systems. The wife, who was 50 years old at the time of trial, has a G.E.D. She assisted the husband with his business, but was primarily a homemaker. Over the course of the marriage, the parties acquired various real estate, IRAs, and other accounts.In January 2005, the husband fathered a child with another woman. He informed the wife about the child in November 2005. On October 31, 2006, he entered into a written agreement with the mother of that child to pay $500 per month for child support and $10,000 for past support. He also gave her an additional $10,000 to $12,000. On February 4, 2009, the wife obtained a temporary protection order against the husband, following an incident at the marital home. On March 2, 2009, the wife filed a complaint for divorce. The matter proceeded to trial before a magistrate over four days, beginning on June 14, 2010.

**{¶3}** The wife presented expert testimony from Robert Ranallo, C.P.A., an accountant with the firm of Skoda, Minotti, and Koeth, and a practicing attorney with the firm of Ranallo & Aveni, L.L.C. Ranallo testified that Power Alarm was formed by the husband in 1979, and that from that time to the early 1980s Power Alarm was worth approximately $100,000, or about three times the husband's annual income from that time period. In determining the present value of Power Alarm, Ranallo noted that the business was fairly steady prior to 2006, but it experienced extraordinary growth in 2006 and 2007. Sales again increased from 2008 to 2009. Ranallo opined that Power Alarm

2

has a value of $650,000.[1]  This valuation includes an account receivable in the amount of $223,500, in connection with the purchase of property located on Cresthaven in Willowick.

{¶4}   The wife testified that she was primarily a stay-at-home mother, but early in the marriage, she assisted the husband with debt collection, office cleaning, and business-related entertaining.   The wife presented evidence that demonstrated that Power Alarm paid many of the husband's entertainment and other expenses as well as the couple's personal expenses, travel, and entertainment.   The wife testified that the husband received as much as $100,000 "off the books" or from undeclared cash and gains from gambling.

{¶5}   The parties are also part owners of real estate, located on Lakeland Boulevard in Euclid, which is rented by Power Alarm.   The wife presented evidence that the value of their marital interest in this parcel is $160,000.

{¶6}   The marital home, located on Oakwood Drive in Willoughby Hills, has a stipulated value of $400,000.   The parties own rental property on Mildred Drive in Willowick, with a stipulated value of $133,060, and rental property located on Bunker Road in Willowick, with a stipulated value of $128,970.   The parties also purchased property located on Helmsman Road in Port Clinton, which has a stipulated value of $180,000, and a home in Cancun, Mexico, with a stipulated value of $140,000.

{¶7}   Another parcel, located on White Road in Willoughby Hills was purchased by the husband in 1977, which was prior to the marriage.  He transferred the property to his mother in 1979.   In 2008, the husband's mother executed a Transfer on Death Deed, conveying the property to the husband upon her death.  During the course of the

---

1. The husband conceded that $645,000 would be an accurate valuation.

3

marriage, the $12,425 mortgage for this property was paid off with marital funds. This parcel, which has a stipulated value of $78,300, was then rented for $900 per month. At the time of trial, their daughter lived there. EKBK, L.L.C. ("EKBK") was formed by the husband, Power Alarm, and the husband's friend, Ed Krevas ("Krevas"), in 2006. Power Alarm put approximately $223,500 into this company. The husband has a 75% interest in the company. The sole asset of the company is property located on Cresthaven Drive. Power Alarm paid for improvements to the property, and it has a fair market value of $300,000.

{¶8} Joint exhibits established that in 2005 Power Alarm had gross receipts of $2,057,213, with a gross profit of $1,003,893. The parties had an adjusted gross income of $141,423. In 2006, Power Alarm had gross receipts of $2,056,459. The parties had an adjusted gross income of $258,447. In 2007, Power Alarm had gross receipts of $2,158,086, with a gross profit of $1,082,085. The parties had an adjusted gross income of $279,429.

{¶9} In 2008, Power Alarm had gross receipts of $2,013,690, and the parties had an adjusted gross income of $143,564. In 2009, Power Alarm had gross receipts of $2,065,805, with a gross profit of $1,059,800. The parties' adjusted gross income had not been calculated as of the date of trial.

{¶10} Joint exhibits further established that the parties also have a Morgan Stanley Smith Barney Account. The statement issued immediately prior to trial indicates that there is a balance of $75,221. The parties have an American Funds account with a value of $7,124, a UBS account with $1,496, a Metropolitan Life Insurance policy with a basic cash value of $29,266, and "paid up additional insurance," of $16,773. The parties also net approximately $30,000 from rental income each year.

4

{¶11} With regard to her debts and expenses, the wife testified that she would have to purchase health insurance, has existing medical bills of $11,000, and that her total monthly expenses amount to approximately $14,304. She incurred $9,500 in obtaining a valuation for Power Alarm, and incurred attorney fees of $41,150. The parties also owe $87,011 on a Chase Bank loan, $15,095 on a second Chase Bank account, and $4,380 on a Visa credit card issued by Target.

{¶12} The husband testified that he purchased the White Road home prior to the marriage and also invested a total of $250,000 in the Cresthaven purchase. The accountant for Power Alarm, Keith Pasa, testified that the husband is the sole shareholder of the corporation. The husband is permitted to deduct 50% of business meals and expenses before determining his net income. Pasa did not determine, however, the total of personal expenses that the company pays on behalf of the husband, and he did not know if the husband received any additional cash.

{¶13} Krevas testified that he had made an offer to purchase the Cresthaven parcel for $300,000 but could not obtain financing. In 2006, he approached the husband, who agreed to assist him with the purchase through Power Alarm. Krevas in turn gave the husband various promissory notes for the Power Alarm funds.

{¶14} Following the trial, on November 24, 2010, the husband filed a motion to add critical evidence, complaining that tax liabilities for 2006 and 2009 reduced the value of Power Alarm by $100,000. The magistrate held a hearing on this motion on December 8, 2010, and subsequently denied it.

{¶15} The magistrate rendered a 46-page decision on April 18, 2011. The magistrate valued Power Alarm at $650,000 and awarded each party one-half of this asset. The magistrate found that the White Road property was the husband's separate

5

property, but gave the wife a distributive award of $22,650 for her share of the marital funds expended on this parcel. The magistrate also awarded the husband Power Alarm, EKBK, and Cresthaven, and awarded the wife $325,000 or one-half the value of Power Alarm. The husband was awarded the Lakeland parcel on which Power Alarm is located, and the wife was awarded $80,000, the value of one-half of the marital value of this asset. The magistrate determined that the Bunker Road, Mildred Drive, Oakwood Drive, Cancun, and Port Clinton properties were all marital property and ordered them to be sold and the proceeds divided equally. The values of the life insurance, retirement accounts, and investment assets were also divided equally. The magistrate also found that the husband had dissipated marital funds in connection with his child born in 2005, and awarded the wife $31,500 in additional funds. The magistrate also awarded the wife $10,000 per month for spousal support for two years, then $9,000 per month for four years, then $8,000 per month for three years.

{¶16} Both parties filed objections to the magistrate's decision. In an order dated May 4, 2012, the trial court determined that the magistrate erred in rendering the spousal support award. The court reduced the award to give the wife $7,000 per month for seven years. The court also modified the magistrate's recommendations by permitting the wife to retain the Oakwood Drive home, reducing her award from Power Alarm from $325,000 to $305,000, and eliminating her $80,000 award from the Lakeview parcel in order to give the husband his $100,000 portion of the equity from the Oakwood Drive home. On June 29, 2012, the court issued the final decree of divorce. The husband now appeals and assigns nine errors for our review. The wife cross-appeals and assigns two errors. We shall combine the assignments of error where they share a common basis in law or in the record.

6

**{¶17}** Husband's Assignment of Error One

"The trial court erred and abused its discretion in making an excessive award of spousal support to Wife. The trial court overestimated husband's income; erred in finding that Wife was not voluntarily underemployed; failed to consider that Wife will realize over $600,000 in cash while Husband will have no liquid assets and failed to impute interest income to Wife."

**{¶18}** Wife's Cross-appeal Assignment of Error Two

"The court erred and abused its discretion in reducing the amount of spousal support awarded to Plaintiff-Appellee, where the Magistrate was in the position to determine the credibility of the witnesses."

**{¶19}** As a general matter, we review spousal support issues under an abuse of discretion standard. *See Dunagan v. Dunagan*, 8th Dist. No. 93678, 2010-Ohio-5232, ¶ 12; *Sweet v. Sweet*, 11th Dist. Nos. 2007-A-0003 and 2008-A-0003, 2009-Ohio-1924, ¶ 97. As long as the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it. *Id.* at ¶ 34; *Neumann v. Neumann*, 8th Dist. No. 96915, 2012-Ohio-591, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66, 488 N.E.2d 857 (1986). When reviewing a trial court's decision for an abuse of discretion, we cannot simply substitute our judgment for that of the trial court. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

**{¶20}** In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18. *Robinson v. Robinson*, 8th Dist. No. 97933, 2012-Ohio-5414; *Ruiz-Bueno v. Ruiz-Bueno*, 11th Dist. No. 2007-L-180, 2008-Ohio-3747, ¶ 34. The factors the trial court must consider include each party's income, earning capacity, age,

7

retirement benefits, education, assets and liabilities, and physical, mental and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). In addition, the trial court is free to consider any other factor that the court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n).

{¶21} The trial court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making its award. *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093 (12th Dist.1996). If the record reflects that the trial court considered the statutory factors and if the judgment contains detail sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. *Matic v. Matic*, 11th Dist. No. 2000-G-2266, 2001 Ohio App. LEXIS 3360 (July 27, 2001); *Daniels v. Daniels*, 10th Dist. No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008), citing *Schoren v. Schoren*, 6th Dist. No. H-04-019, 2005-Ohio-2102.

{¶22} In this matter, the trial court separately addressed each of the factors set forth in R.C. 3105.18 in relation to the evidence presented at trial. Applying R.C. 3105.18(C)(1)(a), (b), (e), (g), (h), and (i), the court noted that the parties had been married for 26 years, that wife is a homemaker with a G.E.D. who earns no income, and could at best, earn only the minimum wage, and that the husband has taken several college classes and has 30 years of experience in his field. The court stated that his income is impossible to determine with precision because of his ability to receive cash withdrawals from the business at his sole discretion. The court found the husband's

8

claim that he earned between $6,000 and $12,000 in cash to lack credibility, and it determined that it was at least $24,000 per year as he admitted in his deposition prior to trial. The court carefully evaluated the financial records and determined that the husband's annual income is $176,626.

{¶23} Under subdivision (c), the court noted that the wife is in counseling and is taking an antidepressant. Under subpart (d), the court identified the parties' retirement funds. Under subparts (f) and (g), the court noted that the parties enjoyed a high standard of living, and that the wife contributed to the husband's earning capacity by taking care of the home so he could devote more time to his business. In accordance with subdivisions (j) and (k) the court noted that the wife has lost 26 years of productive income and higher education during the marriage and will have to obtain her own health insurance, but the husband has been able to pay considerable personal expenses through Power Alarm. The court created a spreadsheet addressing the tax consequences of the divorce as required under subpart (l).

{¶24} From the foregoing, the decision of the trial court is well supported in the record, and there is competent, credible evidence going to all of the statutory elements for establishing a spousal support order.

{¶25} The husband complains that the court erroneously relied upon deposition testimony to support its finding that he made cash withdrawals from Power Alarm of about $24,000 per year and in imputing $21,000 in extra income from Power Alarm's payment of his expenses, for a total of $45,000 in "other income." The husband also complains that the court failed to consider that he must pay property taxes on the rental income.

{¶26} As an initial matter, it is undisputed that the husband admitted in his

9

deposition that he took $24,000 in cash from the business per year, and this is an admission by a party opponent under Evid.R. 801(D)(2). Further, in determining the income of the parties, courts have particularly scrutinized situations where a spouse is the sole shareholder of his corporation and has "unlimited control over the distribution of the corporation's profits and assets." *Burkart v. Burkart,* 173 Ohio App.3d 252, 2007-Ohio-3992, 878 N.E.2d 41, ¶ 22 (10th Dist.). Courts have found a need to pay particular attention to the possibility that a spouse who is the sole shareholder of a business is engaged in "creative accounting" designed to cloak net income. *Id.*

{¶27} Here, the court noted that the husband testified at trial that he received between $6,000 and $12,000 in cash per year from the business, but in his deposition, he admitted that he received $24,000 per year. The court then determined that the husband's trial testimony was not credible. As to the remaining $21,000 in "other income," the record clearly demonstrates that Power Alarm pays many other ordinary expenses for the husband, including his vehicle, insurance, meals, vacations, and entertainment, and that the parties enjoyed a high standard of living. The trial court's findings and conclusions are fully supported in the record, and therefore, we find no abuse of discretion. Moreover, as to the issue of taxes, it is unclear how much Power Alarm must pay in property taxes. In any event, the record establishes that the husband owns the Lakeland Boulevard parcel with a partner, and they split the property taxes.

{¶28} The husband next complains that the court erred in concluding that the wife was not voluntarily underemployed. The issue of whether a party is voluntarily unemployed or underemployed is a factual determination to be made by the trial court based on the circumstances of each particular case. *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993). A trial court does not err in rejecting a claim that a

spouse is voluntarily underemployed where the spouse is employed to the same extent that she was during the marriage and does not have any exceptional skills with which to improve the employment skill. *Lawler v. Lawler*, 11th Dist. No. 95-G-1950, 1997 LEXIS 5242 (Nov. 24, 1997).

{¶29} In this matter, the wife was 50 years old at the time of trial, she has a G.E.D., and has only worked sporadically at the husband's company. She was also dealing with issues surrounding the divorce. The record does not indicate that she has other employment skills. Therefore, we find no abuse of discretion in connection with the court's determination that she was not voluntarily underemployed.

{¶30} Finally, as to the complaint that the wife has received the greater proportion of liquid assets and the husband is without funds to pay all court-ordered amounts, we note that the presence of significant liquid assets in a distribution of property is a factor that may be considered by the trial court when awarding spousal support. *O'Grady v. O'Grady*, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504, ¶ 87. In *Schalk v. Schalk*, 3d Dist. No. 13-07-13, 2008-Ohio-829, the court concluded that the wife's larger share of liquid assets militated in favor of a reduction in the spousal support award.

{¶31} In this matter, we find no abuse of discretion in connection with the court's division of liquid assets. As an initial matter, we note that the trial court observed that the parties had a marriage of long duration, but it reduced the award to wife that was recommended by the magistrate and awarded her $7,000 per month for seven years. In addition, the husband was awarded his businesses, which generate considerable cash and will presumably continue to do so in the future. The court also noted that the husband can obtain cash from Power Alarm at his sole discretion, has used money from

11

Power Alarm to pay his personal expenses, and has exclusively handled the parties' finances. The court ordered that the parties' Bunker Road, Mildred Drive, Port Clinton, and Cancun properties sold, with the balance divided equally between the parties. The court's award was fair and equitable.

{¶32} The wife complains that the trial court erred insofar as it failed to order the spousal support outlined by the magistrate. The magistrate recommended that the wife receive $10,000 per month for two years, then $9,000 per month for four years, then $8,000 per month for three years. The court reduced the award to give the wife $7,000 per month for seven years. The trial court stated:

{¶33} It is important to note that a temporary support order has been in effect since November 1, 2009. The order provides * * * for a total of $11,000 per month to be paid by the Husband. * * * As a result, the Court finds the duration of the temporary order shall be taken into consideration for an award of spousal support.

{¶34} We accept this rationale, and we find no abuse of discretion in connection with the court's deviation from the amount of spousal support chosen by the magistrate.

{¶35} In accordance with the foregoing, these assignments of error are without merit.

{¶36} Husband's Assignment of Error Two
"The trial court committed plain error by holding that the husband had dissipated $43,000 in marital assets. Husband's actions did not meet the statutory definition of financial misconduct. The trial court also abused its discretion by adding $20,000 — that Husband allegedly spent in relation to his son — to the dissipation finding even though the evidence at trial established that the $20,000 in attorney fees was paid to his

12

divorce counsel."

{¶37} Pursuant to R.C. 3105.171(E), a trial court has broad discretion to make a distributive award to a spouse in order to compensate for the financial misconduct of the other spouse. *Hvamb v. Mishne*, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, ¶ 14, citing *Lassiter v. Lassiter*, 1st Dist. No. C-010309, 2002-Ohio-3136. *See also MacDonald v. MacDonald*, 8th Dist. No. 96099, 2011-Ohio-5389. Under R.C. 3105.171(E), financial misconduct includes the dissipation, concealment, destruction, or fraudulent disposition of assets. R.C. 3105.171(E)(3).

{¶38} In this matter, the evidence of record established that the husband expended $43,000 of marital funds in connection with the birth of the child born in 2005. He admitted that he had given the mother of this child about $30,000 in support payments, $10,000 in a lump sum, and other gifts and smaller sums of money totaling $2,000-$4,000. The wife received an award of $31,500 in additional funds that the court determined was depleted in connection with the birth of the child. We therefore find that the trial court acted within its broad discretion in giving the wife a distributive award of $31,500.

{¶39} Husband's Assignment of Error Three

"Trial court erred as a matter of law and abused its discretion when it made a distributive award of $22,500 regarding the White Road property which was titled in the name of husband's mother prior to the marriage. There was no credible evidence that marital assets were used to cover the cost of maintaining the property."

{¶40} Wife's Cross-appeal Assignment of Error One

"The court erred in calculating Defendant-Appellant's premarital interest in the White Road property."

13

{¶41} R.C. 3105.171(A)(6)(a) defines "separate property" to include any real and personal property that one spouse acquired before the parties were married. In *Worthington v. Worthington*, 21 Ohio St.3d 73, 488 N.E.2d 150 (1986), the Ohio Supreme Court held that the increase in value of separate property is marital property where it is the result of the couple's expenditure of a substantial sum of marital funds and labor.

{¶42} In this matter, the husband complains that since this parcel was titled in his mother's name, it cannot be part of the marital estate. The trial court determined that the value of the husband's separate interest in this asset is $33,000. The court concluded, however, that the wife has a marital interest in the parcel valued at $22,650. The record established that during the course of the marriage, the wife understood that the parcel was in the husband's name; however, marital funds from the parties' joint checking account were used to pay the mortgage. When the parties later rented it, they received the rental income. The parties also claimed the depreciation and other expenses on their income tax returns. On this record, and in light of the lower court's determination that the husband's claim that the rent paid by the tenant covered all of the expenses for this parcel was not credible, we find no abuse of discretion.

{¶43} The wife claims, however, that the court erred in determining that the premarital, separate property portion of this parcel was $33,000. She argues that only $3,500 was paid from the husband's separate funds. The trial court determined, and the record indicates that the husband purchased this parcel for $33,000 in 1977. The husband claimed that his mother helped him purchase the home, but he could not recall specifics about the purchase. The wife claimed that marital funds were used to pay expenses for the home during the 26 years of the marriage, but she acknowledged that

14

the property generated rental income. On this record, we cannot say that the trial court abused its discretion in determining that the husband's separate interest in the parcel is $33,000 and that the wife is entitled to $22,650 from her marital interest in this property.

**{¶44}** Husband's Assignment of Error Four

"The trial court's decision regarding attorney fees was an abuse of discretion as the payment of attorney fees is the responsibility of the person who retains the attorney and Wife was given ample funds from the division of assets to pay her attorney while Husband was left with no liquid assets."

**{¶45}** Our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Bradbeer v. Bradbeer*, 11th Dist. No. 92-L-057, 1993 Ohio App. LEXIS 2184 (Apr. 23, 1993); *Neumann v. Neumann*, 8th Dist. No. 96915, 2012-Ohio-591, citing *Gourash v. Gourash*, 8th Dist. Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), and *Oatey v. Oatey*, 83 Ohio App.3d 251, 614 N.E.2d 1054 (8th Dist.1992).

**{¶46}** Pursuant to R.C. 3105.73(A), a court may award all or part of reasonable attorney fees and litigation expenses to either party if the court finds the award equitable. In determining whether such an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(B); *Riley v. Riley*, 11th Dist. No. 2012-A0037, 2013-Ohio-1604, ¶ 67; *Mlakar v. Mlakar,* 8th Dist. No. 98194, 2013-Ohio-100.

**{¶47}** Here, the trial court noted that the wife's counsel had to expend

15

"extraordinarily more effort to obtain information" regarding Power Alarm's complicated purchase of the Cresthaven parcel. In addition, the husband refused to produce documents requested in discovery, which forced the wife to file motions to compel discovery thereby incurring additional fees. The court considered that the wife currently owed $43,825 in attorney fees and expenses, that the husband has already paid $7,000 for her attorney fees, and that the husband paid his attorney fees and related costs through Power Alarm. The court noted that the wife had no income and there was no reliable evidence that she could obtain employment of significance. The court awarded her 60% of her total fees or $30,795. The factual considerations upon which the award was based are supported by competent credible evidence, and are not against the manifest weight of the evidence, so we find no abuse of discretion.

**{¶48}** Husband's Assignments of Error Five and Six

"The trial court's failure to credit Husband for the value of the Power Alarm business that existed prior to the marriage was against the manifest weight of the evidence."

"The trial court committed plain error in the Breakdown and Division of Assets in the evaluation and award of Power Alarm assets. Both the Mercedes automobile and the UBS Retirement Account were held by the Power Alarm Company and were part of the $650,000 valuation. The trial court also engaged in double-counting in the distribution of the retirement accounts."

**{¶49}** A trial court must generally assign and consider the values of marital assets in order to equitably divide those assets. *See Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 22. *Focke v. Focke*, 83 Ohio App.3d 552, 615 N.E.2d 327 (2d Dist. 1992); *James v. James*, 101 Ohio App.3d 668, 656 N.E.2d 399 (2d Dist. 1995).

16

**{¶50}** Further, "[w]hen the parties have agreed, without objection and with the judge's approval, to enter into stipulation for the record, the court will not consider objections to such stipulations on appeal." *Booth v. Booth*, 11th Dist. No. 2002-P-0099, 2004-Ohio-524, ¶ 9, quoting *DiGuilio v. DiGuilio*, 8th Dist. No. 81860, 2003-Ohio-2197, ¶ 32. Further, in *Thomas v. Thomas*, 5 Ohio App.3d 94, 98, 449 N.E.2d 478 (5th Dist. 1982), the court stated:

**{¶51}** [W]here a party has initiated negotiations leading to an in-court settlement stipulation incorporating essentially all of his demands, he should not be permitted to contend that the court in approving and adopting the bargain he struck has acted so unfairly as to constitute an abuse of discretion as a matter of law.

**{¶52}** Here, the husband stipulated that the UBS account is a marital asset.

**{¶53}** In any event, there is no indication that the UBS account was included within the value of Power Alarm since it was the subject of a separate stipulation.

**{¶54}** Similarly, there is no evidence that the Mercedes was included within the Power Alarm valuation, which the trial court determined to be the wife's separate property, given to her as an anniversary gift from the husband.

**{¶55}** As to the husband's claim that the court erred in failing to deduct the sum of $100,000 from the valuation of Power Alarm, representing his separate interest in the company prior to the parties' marriage, the magistrate observed that the husband did not identify this asset in a required pretrial identification of separate assets. In addition, the husband did not provide his expert's valuation of the company, nor did he provide anything other than his opinion of the premarital value. The wife's expert testified that the present value of the company is $650,000, and the husband conceded that

17

$645,000 would be accurate.  Therefore, we find no abuse of discretion.

**{¶56}**  These claims are without merit.

**{¶57}**  Husband's Assignment of Error Seven

"The trial court erred and abused its discretion when it denied Husband's Motion to Add Critical Additional Evidence as the evidence impacted the value of Power Alarm.  The trial court erred and abused its discretion when it failed to treat the Husband's Motion to Introduce Additional Evidence as a Motion for New Trial."

**{¶58}**  A new trial may be granted in the sound discretion of the court for good cause shown, and the court's ruling will not be reversed absent an abuse of that discretion.  *Heidnik v. Heidnik*, 11th Dist. Nos. 2012-L-031 and 2012-L-049, 2013-Ohio-1289, ¶ 18; *Byrd v. Byrd*, 10th Dist. No. 01AP-946, 2002-Ohio-2579, ¶ 20.  A new trial may be granted on the basis of newly discovered evidence.  Civ.R. 59(A)(8).  In general, evidence qualifies as newly discovered evidence if it was in existence at the time of trial, but the moving party was excusably ignorant of it.  *Alderman v. Alderman*, 10th Dist. No. 10AP-1037, 2011-Ohio-3928, ¶ 17, citing *In re C.C.*, 10th Dist. Nos. 04AP-883 through 04AP-892, 2005-Ohio-5163, ¶ 75.

**{¶59}**  In this matter, however, the trial court determined and the record establishes that the evidence concerning the 2006 and 2009 tax liabilities was known to the husband prior to trial.  However, the husband waited almost 60 days after trial to raise this claim.

**{¶60}**  This claim is therefore without merit.

**{¶61}**  Husband's Assignment of Error Eight

18

"The trial court erred as a matter of law assessing interest on the cash award and interest on any unpaid amounts of property division of marital and corporate assets at 5% where statutory interest is 3% per thousand per the Ohio Revised Code."

{¶62} Pursuant to R.C. 1343.03, effective June 2, 2004, the appropriate interest rate on a judgment is determined pursuant to R.C. 5703.47, which provides that the federal short-term interest rate shall be determined on October 15 of each year. However, R.C. 1343.03 is applicable only to obligations that are due and payable. *Koegel v. Koegel*, 69 Ohio St.2d 355, 357, 432 N.E.2d 206 (1982). Here, the obligation is not due and payable since it is a promissory note and will not become due and payable unless, following 90 days after the journalization of the court's order, the husband does not make the required payments.

{¶63} This claim therefore lacks merit.

{¶64} Husband's Assignment of Error Nine

"The trial court erred and abused its discretion when it failed to credit Husband for the value of the second mortgage on the marital home which was paid off after trial but before the Court's Final Judgment of Divorce."

{¶65} The husband next complains that in rendering its awards, the trial court failed to give him credit for paying off the second mortgage on the marital home. The court's journal entry indicates, however, that it reduced the term of the spousal support award by two years in light of the lengthy period in which the husband paid temporary support. The record therefore does not support this assignment of error, so it is without merit.

{¶66} For all of the foregoing reasons, we find that the husband's assignments of error in his appeal and the wife's assignments of error in her cross-appeal are without

19

merit.

{¶67} Judgment affirmed.


LARRY A. JONES, P.J., Eighth Appellate District, sitting by assignment,

PATRICIA ANN BLACKMON, J., Eighth Appellate District, sitting by assignment,

concur.