[Cite as *Moore v. Moore*, 2013-Ohio-5649.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO


REBECCA MOORE,                           :        **O P I N I O N**

        Plaintiff-Appellant/               :
        Cross-Appellee,

                                    **CASE NOS.  2012-P-0136**
    - vs -                                   :        **and 2012-P-0138**

RANDALL MOORE, et al.,                   :

        Defendant-Appellee/               :
        Cross-Appellant.


Civil Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 10 DR 439.

Judgment: Affirmed.


*Gregory J. Moore*, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Plaintiff-Appellant/Cross-Appellee).

*David L. Engler*, 839 Southwestern Run, Youngstown, OH 44514 (For Defendant-Appellee/Cross-Appellant).


DIANE V. GRENDELL, J.

{¶1}   Plaintiff-appellant and cross-appellee, Rebecca Moore, and defendant-appellee and cross-appellant, Randall Moore, appeal the Judgment Entry of Divorce, rendered by the Portage County Court of Common Pleas, Domestic Relations Division. The issues before this court are whether a residence should be deemed marital property, where the contract of sale is entered into prior to marriage but payment is made after marriage; whether temporary spousal support should be awarded based on

the disparity of the parties' incomes despite the short duration of the marriage; whether a partial award of attorney fees is merited based on a party's conduct in contempt of court orders; and whether temporary spousal support should be awarded where a spouse's financial situation improved during the course of the marriage. For the following reasons, we affirm the judgment of the court below.

{¶2} On September 1, 2010, Rebecca Moore filed a Complaint for Divorce against Randall Moore and IDS (Randall's business interest).

{¶3} On October 1, 2010, Randall filed his Answer and Counterclaim for Divorce.

{¶4} On November 5, 2010, a Magistrate's Order was issued, requiring Randall to pay temporary spousal support in the amount of $2,000 per month, commencing November 1, 2010.

{¶5} On December 16, 2011, April 6, 2012, and June 15, 2012, the final contested hearings on the merits were held.

{¶6} On September 21, 2012, the domestic relations court issued its Judgment Entry (Final Decree of Divorce). The court made the following findings: The parties married on October 11, 2008, and have become incompatible. No children were born as issue of the marriage. Prior to the marriage, the parties entered into a binding Statement and Agreement of Pre-marital Assets and Debts/Obligations. The termination date of the marriage was set as April 6, 2012 (the date of the second contested hearing).

{¶7} The domestic relations court ordered Randall to pay $4,000 in retroactive spousal support for the months of October and November 2010, and an additional $4,000 in unpaid spousal support for the months of May and June 2012. Randall's

spousal support obligation was terminated, effective June 30, 2012. The court ordered the parties to "consult with a professional tax preparer to determine the most advantageous way to file their 2011 income tax returns," and to "equally share in the total of their refunds or liabilities as determined by the tax preparer." Randall was ordered to contribute $1,000 toward Rebecca's attorney fees. Apart from this contribution, each party was held responsible for his or her own attorney fees.

{¶8} On October 19, 2012, Rebecca filed a Notice of Appeal (11th Dist. No. 2012-P-0136).

{¶9} On October 22, 2012, Randall filed a Notice of Cross-Appeal (11th Dist. No. 2012-P-0138).

{¶10} On December 21, 2012, this court consolidated the appeals on Randall's motion.

{¶11} On appeal, Rebecca raises the following assignments of error:

{¶12} "[1.] The trial court erred and/or abused its discretion in its decision relating to Rainbow's End and Bonnie Lane Residences."

{¶13} "[2.] The trial court erred and/or abused its discretion in that its judgment entry is incomplete and fails to divide property, debts, and other issues."

{¶14} "[3.] The trial court erred and/or abused its discretion in its determination of prospective spousal support."

{¶15} "[4.] The trial court erred and/or abused its discretion in failing to issue orders relating to contempt for Randall's cancellation of health insurance and reimbursement to Rebecca for the amounts she had to pay due to Randall's conduct."

{¶16} "[5.] The trial court erred and/or abused its discretion in its award for attorney fees and litigation expenses."

3

{¶17} "[6.] The trial court decisions [sic] are against the manifest weight of the evidence."

{¶18} On cross-appeal, Randall raises the following assignment of error:

{¶19} "[7.] The trial court erred by abusing their [sic] discretion in determining the award of spousal support."

{¶20} In her first assignment of error, Rebecca contends that the domestic relations court erred by not awarding her a share of the proceeds from the sale of the residence at 333 Rainbows End, Aurora, Ohio.

{¶21} "In divorce proceedings, * * * the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). "A trial court has broad discretion in making divisions of property in domestic cases." *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998), citing *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). "A trial court's decision will be upheld absent an abuse of discretion." *Id.*, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶22} The Statement and Agreement of Pre-marital Assets and Debts/Obligations, entered into by the parties, prior to their marriage, on October 7 and 8, 2008, provides in relevant part:

{¶23} Randall J. Moore (husband) and Rebecca S. Guthlein (wife) * * *
agree * * * that the property listed in Exhibits A and B attached, is an
accurate statement of the value of their respective pre-marital assets, and
that neither party shall obtain any right[,] title or interest of any kind in and
to the value of the premarital property of the other * * * by virtue of the
parties' marriage nor by virtue of any use or occupancy of that property * *

4

*. However, any appreciation to any and all the asset values listed in Exhibits A and B attached as well as any assets acquired by the parties during their marriage are presumed to be post-marital assets and therefore community property, and shall be divided equally in the event of a termination of the marriage * * *. However, as each is presumed by this Agreement to be sole owner of any property he or she owns prior to the marriage, joint use of that property does not give rise to joint ownership, unless the parties agree otherwise in writing. * * * Neither party shall have the right to reimbursement for any contributions made from his or her separate property toward the acquisition of community or joint property and each party hereby expressly waives any such right.

The subject property, 333 Rainbows End, is not listed in the Exhibits attached to the Agreement.

{¶24} On October 8, 2008, Randall entered into a Land Installment Contract for the purchase of 333 Rainbows End. The sole "buyer" in the Land Contract is identified as: "RANDALL J. MOORE, presently a divorced and non remarried man." The Land Contract provided that Randall would make the initial down payment for the purchase before the date of possession, fixed as November 11, 2008.

{¶25} As noted above, the parties married on October 11, 2008. Subsequent to the marriage, Randall made the initial down payment with funds obtained from a line of credit against Randall's equity in a residence at 315 Bonnie Lane, Aurora, Ohio. The equity in the Bonnie Lane property was identified in the parties' prenuptial Agreement as Randall's separate property.

5

{¶26} The Rainbows End property was sold during the pendency of the divorce proceedings.

{¶27} Rebecca contends that the proceeds from the sale of 333 Rainbows End are marital property subject to equitable division. Rebecca's claim is based on the following arguments: the Rainbows End property is not identified in the prenuptial Agreement; the down payment was made, the property occupied, and title transferred during the course of the marriage; the prenuptial Agreement provides that there shall be no reimbursement for contributions made from separate property for the acquisition of marital property; and Randall sold the Rainbows End property during the divorce proceedings contrary to court order.

{¶28} Rebecca's arguments fail to convince this court that the domestic relations court abused its discretion by not awarding her a share of the proceeds from the sale of 333 Rainbows End. As noted by the court, Randall entered the purchase agreement as a "divorced and not remarried man," prior to his marriage with Rebecca. The fact that the property is not identified in the prenuptial Agreement is not determinative, inasmuch as that Agreement did not purport to provide an exclusive list of all premarital assets. Rather, the Agreement presumes that each party is the "sole owner of *any* property he or she owns prior to the marriage," not just the property identified in the Exhibits. The Agreement further provided that joint use or occupancy of separate property will not convert that property into marital property. Since the Rainbows End property remained Randall's separate property, the provision against reimbursement for contributions toward the acquisition of marital property is not relevant. Finally, Rebecca provides no legal authority for the proposition that the acquisition or purchase of real estate does not occur until all executory portions of the purchase agreement are fulfilled.

6

**{¶29}** Rebecca also claims a share of the "appreciation" of the Bonnie Lane property by virtue of the "pay-down of the liabilities associated with the Bonnie Lane residence *which occurred during the marriage*." We reject this argument, as any increase in Randall's equity in 315 Bonnie Lane is distinct from the property's appreciation, i.e., its increase in value. *Black's Law Dictionary* 110 (8th Ed.2004). Moreover, Rebecca did not make a claim against the appreciation of the Bonnie Lane property in the proceedings below and did not introduce evidence of appreciation.

**{¶30}** The first assignment of error is without merit.

**{¶31}** In her second assignment of error, Rebecca claims the domestic relations court erred by not fully dividing the marital estate. Rebecca claims the court failed to divide a washer and dryer in which she claimed an interest. We find no error. The only testimony regarding the washer and dryer given at the hearings was that they were located at the Bonnie Lane property, which, by stipulation, was acknowledged to be Randall's separate property.

**{¶32}** Rebecca also claims that the domestic relations court should have awarded her a 2012 Audi, which Randall testified to having recently purchased. During the course of the proceedings, Randall was ordered to allow Rebecca to use a 2009 Honda Accord, which was identified as Randall's separate property according to the parties' prenuptial Agreement. The Agreement also identified a 2005 Hummer as Randall's separate property. For the first sixteen months of the divorce proceedings, Rebecca used the Honda while Randall paid the car note and insurance. In January 2012, Randall took possession and disposed of the Honda contrary to court order. Again we find no error. The Honda and the Hummer were Randall's separate property, and the court was under no obligation to divide them. Moreover, Randall paid Rebecca

7

the sum of $1,500 in compensation for the use of the Honda and $500 in related attorney fees. With respect to the Audi, Randall acquired this vehicle after the parties separated, but before the termination date of the marriage. Rebecca made no claim against the Audi during the course of the proceedings, and has, thus, waived the issue on appeal. *Dolan v. Dolan*, 11th Dist. Trumbull Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, ¶ 10.

{¶33} Lastly, Rebecca argues that "the trial court should order the parties to meet and file an amended [tax] return which maximizes the tax benefits for both parties for the year 2011 and to divide the tax refund." In the Final Decree of Divorce, the court ordered the parties to consult with a professional tax preparer to determine the most advantageous way of filing the 2011 returns and to equally divide any refund/liability. Rebecca's argument on appeal suggests that the court's order was not complied with rather than that it was erroneous. Accordingly, there is no basis for disturbing the court's judgment.

{¶34} The second assignment of error is without merit.

{¶35} In the third assignment of error, Rebecca asserts the domestic relations court erred in its award of spousal support.

{¶36} "In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property * * *, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party." R.C. 3105.18(B).

{¶37} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal

8

support, which is payable either in gross or in installments, the court shall consider all of the following factors: (a) The income of the parties * * *; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; * * * (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties * * *; * * * [and] (n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C). "The trial court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making its award." *Komes v. Komes*, 11th Dist. Lake No. 2012-L-086, 2013-Ohio-2140, ¶ 21.

{¶38} The propriety of a domestic relations court's award of spousal support is reviewed under the abuse of discretion standard. *Riley v. Riley*, 11th Dist. Ashtabula No. 2012-A-0037, 2013-Ohio-1604, ¶ 14.

{¶39} In the present case, Randall was ordered to pay $2,000 a month for temporary spousal support, commencing in November 2010 and terminating in June 2012, for a total of $40,000 over twenty months.

{¶40} Rebecca argues the amount of spousal support awarded was inadequate given the disparity in the parties' earning abilities, retirement benefits, and in consideration of the parties' "opulent" lifestyle during the course of the marriage. At the time of the Final Decree of Divorce, Randall was earning $150,000 per year while Rebecca was earning $20,000. Randall had retirement accounts worth in excess of $250,000 while Rebecca's retirement assets were less than $1,500.

9

**{¶41}** We find no abuse of discretion. Although there is a significant disparity in the parties' incomes and retirement accounts, they were married for less than two years before separation and no children were born of the marriage. Rebecca has suffered no detriment to her earning ability as a result of her marriage to Randall, despite her claim that she was earning more as an assistant manager at Starbucks prior to the marriage than she is now as a preschool teacher. Rebecca has benefited from a temporary award of spousal support, essentially doubling her income for a length of time comparable to the duration of the marriage before separation. Finally, Rebecca agreed that Randall's retirement accounts would remain his separate property as part of the prenuptial Agreement. To award her spousal support as compensation for the disparity in retirement savings would undermine the purpose of the prenuptial Agreement.

**{¶42}** The third assignment of error is without merit.

**{¶43}** In the fourth assignment of error, Rebecca argues the domestic relations court should have awarded her compensation for Randall's violation of the court order that he provide health insurance for her and her children from a prior marriage.

**{¶44}** Following Rebecca's filing of the Complaint for Divorce, Randall was ordered to maintain Rebecca, and her two children from an earlier marriage, on his insurance. Randall complied with the domestic relations court's order through November 2011, when he removed Rebecca and her children. Thereafter, Rebecca paid for her own insurance at the rate of $244.36 per month.

**{¶45}** In its Final Decree of Divorce, the domestic relations court acknowledged that Randall "terminated Plaintiff-Wife's coverage from his health insurance plan, causing her to incur additional attorney fees." The court decided to compensate Rebecca through an award of attorney fees, as discussed in the following assignment of

10

error. It is within the court's discretion to decide how it addresses Randall's contempt of its orders. In the present case, we find no abuse of discretion, noting that Rebecca benefitted from Randall paying the insurance for her two children from a prior marriage for a period of one year.

{¶46} The fourth assignment of error is without merit.

{¶47} In the fifth assignment of error, Rebecca argues the domestic relations court's award of $1,000 in attorney fees constitutes an abuse of discretion in light of her total fees in the amount of $19,000 and Randall's contemptuous conduct throughout the proceedings.

{¶48} "In an action for divorce * * *, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A).

{¶49} "[A]n award of attorney fees is within the sound discretion of the trial court." *Rand v. Rand*, 18 Ohio St.3d 356, 359, 481 N.E.2d 609 (1985), citing *Cohen v. Cohen*, 8 Ohio App.3d 109, 111, 456 N.E.2d 581 (11th Dist.1983).

{¶50} Rebecca cites to the following instances of Randall's conduct as entitling her to an award of all attorney fees incurred in the course of the litigation: failure to timely pay his support obligation and repeated efforts to terminate and/or modify the obligation; depriving her of the use of vehicles contrary to court order; sale of the Rainbows End property contrary to court order; and the termination of her and her children's medical insurance contrary to court order.

11

{¶51} Randall counters that Rebecca is responsible for the length and the cost of the divorce proceedings in that two of her original attorneys were disqualified during the course of the proceedings; her attorneys caused the appointment of a visiting judge; and her attorneys repeatedly continued, interrupted and delayed hearings.

{¶52} We note that after Randall deprived Rebecca of the use of the 2009 Honda, the domestic relations court ordered him to pay $500 toward Rebecca's attorney fees. In the Final Decree of Divorce, the court ordered him to pay $1,000 toward her attorney fees in compensation for the termination of her and her children's health insurance.

{¶53} In light of the record before this court, which indicates that both parties' conduct contributed to the length and cost of the proceedings, we defer to the domestic relations court's judgment that each party should bear the cost of his or her own representation, which costs are roughly equal.

{¶54} The fifth assignment of error is without merit.

{¶55} In the sixth assignment of error, Rebecca contends that the domestic relations court's decisions are against the manifest weight of the evidence. Rebecca does not, however, identify any specific finding of the court that is against the weight of the evidence, but, rather, "incorporates herein the facts, law and argument set forth above as if fully rewritten." Accordingly, we find no error for the reasons set forth above.

{¶56} The sixth assignment of error is without merit.

{¶57} In his sole assignment of error on cross-appeal, Randall argues the domestic relations court erred in its award of temporary spousal support, based on a decision to fix April 6, 2012, the date of the second contested hearing, as the termination date of the marriage.

{¶58} The term "[d]uring the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation." R.C. 3105.171(A)(2)(a). "If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(b).

{¶59} A trial court enjoys broad discretion in determining the dates constituting the duration of the marriage. *Berish*, 69 Ohio St.2d at 319-320, 432 N.E.2d 183.

{¶60} Randall contends the termination date of the marriage should be July 7, 2011, as the original date scheduled for final hearing. Randall asserts that Rebecca and her attorneys are responsible for the continuation of this hearing and the thirteen-month delay in completing the proceedings.

{¶61} The docket reveals that the original hearing date of June 17, 2011, was continued on motion of Rebecca's counsel, due to a scheduling conflict. The matter was rescheduled for July 7, 2011, before a magistrate of the domestic relations court. At this hearing Rebecca's counsel raised the issue of a conflict of interest with the domestic relations court judge. The magistrate noted that Rebecca's counsel was aware of the alleged conflict prior to the scheduled hearing dates. Randall's counsel offered to waive the conflict but Rebecca's counsel insisted that it could not be waived. As a result, the hearing did not go forward and a visiting judge was appointed to hear the case.

**{¶62}** The docket further reveals that on July 7, 2011, Randall discharged his trial counsel and that substitute counsel did not enter an appearance until July 25, 2011.

**{¶63}** Thereafter, the proceedings were further delayed by the filing of various motions, including motions to terminate the award of temporary spousal support, motions for contempt occasioned by Randall's violation of court orders, a motion to remove plaintiff's counsel for conflict of interest, and further motions for continuances.

**{¶64}** In light of the particular facts of the underlying case, the recognition that both parties bear some responsibility for the delay in resolving the proceedings, and Randall's repeated disregard for orders of the lower court, we find no abuse of discretion in fixing April 6, 2012, as the termination date of the marriage.

**{¶65}** The sole assignment of error on cross-appeal is without merit.

**{¶66}** For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, terminating the parties' marriage, is affirmed. Costs to be taxed against the parties equally.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.


_____


COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

**{¶67}** I write separately regarding Rebecca's first assignment of error, concerning the properties at 333 Rainbows End and 315 Bonnie Lane. Rebecca contends that the proceeds from the sale of the former are marital property, subject to

14

equitable division; and, that she is entitled to a share of the appreciation in value of the latter, due to pay-down in the liabilities associated with it during the marriage.

{¶68} By the prenuptial agreement in this case (the validity of which the parties stipulated to in the trial court) each party retained as separate property the "value" of their premarital assets. Randall listed his equity in the 315 Bonnie Lane as his separate premarital asset. The prenuptial agreement was signed by the parties October 7, 2008, and October 8, 2008. Also, on October 8, 2008, Randall signed the land installment contract regarding 333 Rainbows End. The parties were married October 11, 2008. Randall did not make a down payment on the land installment contract until November 2008.

{¶69} Pursuant to R.C. 5313.01:

{¶70} "'(A) "Land installment contract" means an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation.'" *Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24 (1st Dist.1984).

{¶71} Rebecca's argument on appeal, as in the trial court, is that ownership of the property did not transfer until title to 333 Rainbows End transferred, which occurred during the marriage, thus rendering the house marital property.

{¶72} This is incorrect. The lead case on the subject appears to be the First District's decision in *Hahn*, *supra*. The First District concluded that the vendee in a land installment contract becomes an equitable owner of the subject property when the

15

contract is entered. *Id. Hahn* has been widely cited by the courts of appeals of this state, including the Eleventh District. *Craft v. Edwards*, 11th Dist. Ashtabula No. 2007-A-0095, 2008-Ohio-4971, ¶23. Randall became an equitable owner of 333 Rainbows End October 8, 2008, when he entered the land installment contract for its purchase. Thus, he was an owner of the property three days prior to his marriage with Rebecca, and the house was his separate property. Since he did not gain any monetary equity in the property until November 2008, when he made the down payment on it, he was not required to list it in the assets named in the prenuptial agreement, which spoke in terms of value.

{¶73} Regarding the 315 Bonnie Lane property, the majority notes that Rebecca did not make any claim against its appreciation in the trial court, and did not introduce any evidence on the subject. I agree. I disagree with the majority's other conclusion that any pay down of the property's liabilities during the marriage (resulting in an increase in Randall's equity), cannot be considered an appreciation in its value, or marital property, as a matter of law. Under proper circumstances either or both of these scenarios can occur. *See, e.g., Lowe v. Lowe*, 4th Dist. Pickaway No. 10CA30, 2011-Ohio-3340, ¶30-35. But it was Rebecca's burden to show this in the trial court, and she did not do so.

{¶74} I respectfully concur.